NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

**KANCOR AMERICAS, INC. and KANCOR INGREDIENTS LTD.,**

**Plaintiffs,**

**v.**

**ATC INGREDIENTS, INC.,**

**Defendant.**

Docket No.: 14-cv-4107

**OPINION**

**<u>WILLIAM J. MARTINI, U.S.D.J.</u>:**

Defendant ATC Ingredients, Inc. filed this partial Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) along with a Motion to Transfer Venue pursuant to 28 U.S.C. § 1404. For the reasons set forth below, the motion to dismiss is granted in part, and the motion to transfer venue is granted.

## I. FACTUAL BACKGROUND

Plaintiff Kancor Ingredients, Ltd. ("Kancor India") is an Indian company that manufactures spices, extracts, essential oils, mints, and other commodities for export throughout the world. (Amended Complaint ("AC") at ¶ 4). The Amended Complaint alleges that Defendant ATC Ingredients, Inc. ("ATC") was Kancor India's "sales agent" for Kancor spices and other goods. (AC at ¶ 11). Thomas Jacob is the sole owner and employee of ATC. (Declaration of Thomas Jacob ("Jacob Decl.") at ¶ 2). ATC's sole office is in Manassas, Virginia. (Jacob Decl. at ¶ 4). Defendant Kancor Americas, Inc. ("Kancor Americas") appears to be a subsidiary of Kancor India. Kancor Americas was launched and incorporated, with its headquarters in Morristown, New Jersey, in November 2013. (*Id.* at ¶ 22).

ATC and Kancor India began their relationship in 2006, well before the establishment of Kancor Americas. (AC at ¶ 8). The Amended Complaint alleges that throughout the eight-year Kancor-ATC relationship, there was an agreed-upon course of business between Kancor and ATC. (*Id.* at ¶ 12). Kancor set the final sale prices of the spices and other goods for the customer, and Kancor would ship the products directly to the customers. (*Id.*). Customers would remit payment to ATC, and ATC would forward the payments to Kancor, less a 5% commission. (*Id.*).

Between 2009 and 2011, various factors contributed to a decline in ATC's business, and the ATC-Kancor relationship became strained under these pressures. (*See id.* at ¶¶ 15-21). As of June 2014, the Amended Complaint alleges, ATC owed Kancor India and Kancor Americas, collectively, over $600,000 in unremitted payments.

It appears that in the squabble over the unpaid money, ATC's counsel sent Kancor an email complaining of several possible causes of action against Kancor. First, the, email stated, Kancor and ATC had agreed to create a joint venture "Kancor ATC subsidiary" on which ATC would hold a 10% stake, and that ATC would be part owner of any American subsidiary. (AC at ¶ 27). In that email, ATC's counsel complained that ATC was supposed to have been a part owner of Kancor Americas. (Certification of Robert Brady ("Brady Decl.") Exhibit A).

The email also stated that ATC's client list represented a "trade secret" protected by the Virginia Trade Secrets Act. It stated that Kancor had violated the "Virginia Trade Secrets Act and Business Conspiracy statute" by using ATC's client list. (*Id.*). Finally, it stated:

> We hope that Kancor's exclusion of ATC from the ownership of Kancor USA and apparent use of ATC's Trade Secrets were inadvertent and the parties can reach a reasonable and amicable resolution of these issues and other related issues in short order. However, if these errors are not corrected ATC will likely have substantial claims against Kancor and Kancor USA. Please contact me to discuss an amicable resolution. If we have no response by July 3, 2014, we will take further action to protect ATC's interests, including seeking an injunction to prevent the use of ATC's Trade Secrets.

Eight days later, Plaintiffs filed this lawsuit. (*Id.* at ¶ 28). Ten days after the Complaint's filing, ATC paid off the total balance owed to Kancor Americas. (*Id.* at ¶¶ 20-31). Plaintiffs amended the original Complaint on July 11, 2014 to reflect

ATC's satisfaction of Kancor Americas's outstanding balance. A balance of $550,000 to Kancor India remains outstanding.

The Amended Complaint alleges three common law causes of action: breach of contract, unjust enrichment, and conversion. It also contains a cause of action under the Declaratory Judgment Act. The Declaratory Judgment Act cause of action seeks declarations about the business agreements that occurred between ATC and Plaintiffs and the status of ATC's alleged trade secrets.

## II. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998) (*citing Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.* at 678.

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263

(3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993).

**B. Common Law Claims**

It is not disputed that ATC's payment to Kancor Americas terminated Kancor Americas's common law causes of action. It is also not disputed that Kancor India has stated a common law claim for breach of contract.

The parties also touch upon the threshold issue of choice of law. Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). Plaintiffs argue that the substantive law of New Jersey should apply; Defendant argues that the substantive law of Virginia should apply.

A federal district court sitting in diversity must apply the forum state's choice of law rules. *Gen. Star Nat'l Ins. Co. v. Liberty Mut. Ins. Co.*, 960 F.2d 377, 379 (3d Cir. 1992) (*citing Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)). In conducting a choice of law analysis, New Jersey employs the "most significant relationship" test. *P.V. v. Camp Jaycee*, 197 N.J. 132, 155 (2008). The most significant relationship test consists of two prongs. The first prong requires a determination as to whether an "actual conflict" exists between New Jersey law and the law of the competing state. *Id.* at 143. If no actual conflict exists, the inquiry is over, and New Jersey law applies. *See In re Ford Motor Co.*, 110 F.3d 954, 965 (3d Cir. 1997). In this case, the parties only note a difference between New Jersey and Virginia under the conversion cause of action. According to Defendant, however, the difference is immaterial.

It is not always appropriate to make choice of law decisions on a motion to dismiss. *See Durso v. Samsung Electronics Am., Inc.*, Civ. No. 12-5352, 2013 WL 5947005, at *6 (D.N.J. Nov. 6, 2013) (*citing Harper v. LG Electronics USA. Inc.*, 595 F. Supp. 2d 486 (D.N.J. 2009); *In re K–Dur Antitrust Litigation,* 338 F. Supp. 2d 517 (D.N.J. 2004); *Samsung DLP Television Class Action Litigation,* Civ. No. 07-2141, 2009 WL 3584352 (D.N.J. Oct. 27, 2009)). Based on the parties' arguments, there is no apparent conflict of law. The Court will accordingly apply the law of the State of New Jersey to the common law claims for the purposes of analysis on this motion. However, it is premature to definitively decide the choice of law issue. It may be raised again at a later time should it become germane.

ATC argues that the common law cause of action for unjust enrichment must be dismissed because a claim in quasi-contract can only exist in the absence of an express contract. *See Dandana, LLC v. MBC FZ-LLC*, Civ. No. 08-5592, 2011 WL 5412952, at *9 (D.N.J. Nov. 7, 2011) *aff'd*, 507 F. App'x 264 (3d Cir. 2012). While that may be true, it is permissible for Plaintiffs to plead alternative causes of action. *Simonson v. Hertz Corp.*, Civ. No. 10-1585, 2011 WL 1205584, at *7 (D.N.J. March 28, 2011) ("While a plaintiff may not recover on both a breach of contract claim and an unjust enrichment claim, a plaintiff may plead alternative and inconsistent legal causes of action arising out of the same facts."); *see also* Fed. R. Civ. P. 8(d)(2). ATC's argument therefore fails.

ATC also argues that Plaintiffs have failed to state a claim for conversion. "The crux of conversion is wrongful exercise of dominion or control over property of another without authorization and to the exclusion of the owner's rights in that property." *Chicago Title Ins. Co. v. Ellis*, 409 N.J. Super. 444, 456 (App. Div. 2009). "Where a sum of money is identifiable, courts look to the relative rights of each party to possession and use of the money to determine whether a cause of action lies for conversion." *Id*. Where there is only a relationship of a debtor and creditor, an action for conversion of funds representing the indebtedness will not lie against the debtor. *Advanced Enterprises Recycling, Inc. v. Bercaw*, 376 N.J. Super. 153, 161 (App. Div. 2005).

Kancor India has stated a claim for conversion. The Amended Complaint does not allege a typical debtor-creditor relationship. Rather, ATC acted as Kancor's payment collection agent in the United States. Kancor India alleges that it had "an interest in and immediate right to the monies obtained by ATC when customers paid ATC for [Kancor India's] spices and other goods." (AC at ¶ 47). When ATC allegedly interfered with Kancor India's immediate right to remittance of payment, it exercised wrongful dominion over Kancor India's property to the exclusion of Kancor India's rights. Therefore, Kancor India has stated a claim for conversion.

**C. Declaratory Relief**

The Amended Complaint seeks four declarations:

1.) Kancor and ATC never formed or agreed to form a joint venture, of which ATC would own 10%.

2.) Kancor never promised that it would not compete with ATC or that ATC would be a part owner of any American subsidiary.

3.) Kancor did not misappropriate or use any of ATC's trade secrets.

4.) Kancor did not violate the Virginia Business Conspiracy statute, Va. Code Ann. § 18.2-499 *et seq*.

(AC at ¶¶ 52-55).

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). *See also State Auto Ins. Companies v. Summy*, 234 F.3d 131, 133 (3d Cir. 2000). The Declaratory Judgment Act confers discretion on the courts to hear a claim, rather than an absolute right upon the litigant. *Summy*, 234 F.3d at 133; *Wilton v. Seven Falls Co.*, 515 U.S. 277, 278 (1995).

Wright and Miller state:

> The remedy made available by the Declaratory Judgment Act . . . is intended to minimize the danger of avoidable loss and the unnecessary accrual of damages and to afford one threatened with liability an early adjudication without waiting until an adversary should see fit to begin an action after the damage has accrued. It relieves potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure—or never.

§ 2751 Purpose of Declaratory Judgments, 10B Fed. Prac. & Proc. Civ. § 2751 (3d ed.).

A declaratory judgment is not appropriate where it would not resolve the entire case or controversy as to any party, but would merely determine a collateral legal issue governing certain aspects of their pending or future suits. *Calderon v. Ashmus*, 523 U.S. 740, 747 (1998). If the plaintiff's question would be answered with the resolution of the breach of contract claim, then the declaratory relief is not necessary. *See Delaware State Univ. Student Hous. Found. v. Ambling Mgmt. Co.*, 556 F. Supp. 2d 367, 375 (D. Del. 2008).

Plaintiffs cite *Global Fresh Produce, Inc. v. Epicure Trading, Inc.*, Civ. No. 11-1270, 2012 WL 924326, at *4 (D.N.J. Mar. 16, 2012) for the proposition that "[d]eclaratory relief is warranted in cases where litigation is "imminent and

'inevitable.'" (*citing* 10B C. Wright, A. Miller, & M. Kane, *Federal Practice & Procedure* § 2751 (3d ed. 2010)). *See also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 119 (2007) ("[W]here the plaintiff's self-avoidance of imminent injury is coerced by the threatened enforcement action of a private party . . . lower federal and state courts have long accepted jurisdiction."). Plaintiffs argue that Defendant's counsel's email made a lawsuit inevitable. The email suggested a possible lawsuit by concluding:

> Please contact me to discuss an amicable resolution. If we have no response by July 3, 2014, we will take further action to protect ATC's interests, including seeking an injunction to prevent the use of ATC's trade secrets.

On the whole, ATC's "threat" does not warrant declaratory relief. Defendant's email does not make litigation imminent because, even though it acknowledges a possible cause of action, the immediate appeal is for a resolution without litigation. *Cf. Global Fresh Produce, Inc. v. Epicure Trading, Inc.*, Civ. No. 11-1270, 2012 WL 924326, at *4 (D.N.J. Mar. 16, 2012) (finding that plaintiff did not experience an imminent threat of litigation where defendant had offered to "settle in order to obviate the need for costly legal proceedings."). Moreover, the issues Plaintiffs raise in the declaratory judgment claim are all possible defenses to Plaintiffs' common law claims, or alternatively, are compulsory counterclaims. *See Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1059 (3d Cir. 1978) (noting that an issue which is an "offshoot of the same basic controversy between the parties," is a compulsory counterclaim.). Therefore, all the issues raised in the claim for declaratory judgment will be resolved in the course of this litigation without the need for a separate declaratory judgment.

## III. MOTION TO TRANSFER VENUE

28 U.S.C. § 1404(a) permits the court to transfer a case to any other district where the civil action may have been brought "for the convenience of the parties and witnesses" or "in the interests of justice." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). The burden of establishing the need for transfer rests with the movant, and the plaintiff's choice of venue should not be lightly disturbed. *Id*.

The "strong presumption in favor of the plaintiff's choice of forum . . . may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255 (1981). "[H]owever, that . . . presumption applies with less force when the plaintiff or real parties in interest are foreign." *Id.* This is because it is reasonable to assume

that a plaintiff choosing its home forum has done so for the purposes of convenience, but where the plaintiff is foreign, that assumption is much less reasonable. *Id.*

Commentators have called on courts to consider all relevant factors to determine whether, on the whole, the litigation would be more convenient and just if transferred to a different forum. *Jumara v. State Farm Ins. Co.*, 55 F.3d at 879 (*citing* 15 WRIGHT, MILLER & COOPER § 3847). These factors include private and public interests. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988). Private interests include the defendant's preference, whether the claim arose elsewhere, the convenience of the parties as indicated by their relative physical and financial condition, the location of books and records, and the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in the plaintiff's chosen forum. *Jumara*, 55 F.3d at 879. The public interests include: the enforceability of the judgment, practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879-80 (3d Cir. 1995).

In this case, the public and private interests of justice and convenience warrant transfer. Because Kancor India is foreign, the presumption favoring its forum choice has less weight. In terms of convenience, the difference between a courthouse in Alexandria, Virginia and Newark, New Jersey is negligible for corporate representatives coming from India. But for ATC, the difference between Alexandria, Virginia and Newark, New Jersey is significant. ATC is a one-man operation, and for Mr. Jacob to come to Newark for settlement conferences and other proceedings would effectively shut down his business for the entire day. (Jacob Decl. at ¶ 13). The New Jersey forum will make the litigation process significantly more difficult for ATC but not at all more difficult for Kancor India.

The public interest factors also weigh in favor of transfer. For example, Virginia has a much stronger interest in resolving this dispute. All of the culpable conduct occurred in Virginia or India, not New Jersey. *Hoffer v. InfoSpace.com, Inc.*, 102 F. Supp. 2d 556, 576 (D.N.J. 2000) ("Because a substantial amount, if not all, of the alleged culpable conduct occurred in Washington, not New Jersey, Washington has a strong public interest in adjudicating this dispute"). Also, the trade secrets issues in this case directly involve questions of Virginia statutes.

Another public interest consideration is the relative congestion of the courts in the potential fora. *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 206 (D.

Del. 1998). Statistics compiled by the Administrative Office of the United States Courts demonstrate that the median time from filing to trial in the Eastern District of Virginia is 11.9 months, while the time for the District of New Jersey is nearly triple, at 36.8 months. S*ee* Judicial Caseload Profile Report, Table C-5, U.S. District Courts – Median Time Intervals from Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending September 31, 2013 (visited March 25, 2015), found at http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2013/appendices/C05Sep13.pdf. To proceed in this forum, which has little or no connection to the matter, will delay a speedy resolution of this case. *Compare with Hardaway Constr., Inc. v. Conesco*, 583 F. Supp. 617, 621 (D.N.J. 1983) (transferring venue from New Jersey to Maryland in part because Maryland's docket was "lighter" than New Jersey's). Transferring the case to Virginia is likely to provide faster relief to the parties, reduce the total strain on the judicial system, and apply judicial resources in the forum where the real interest is.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is granted in part and denied in part. Kancor Americas claims are dismissed, and Kancor India's claim for declaratory relief is dismissed. Defendant's Motion for Transfer of Venue to the Eastern District of Virginia is granted. An appropriate order follows.

/s/ William J. Martini

**WILLIAM J. MARTINI, U.S.D.J.**

**Date: April 2, 2015**