IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

KANCOR AMERICAS, INC., et al.,          )
                                        )
    Plaintiffs,                         )
                                        )
v.                                      )          Case No.: 1:15-cv00589-GBL-IDD
                                        )
ATC INGREDIENTS, INC.,                  )
                                        )
    Defendant.                          )

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiffs Kancor Americas, Inc. ("Kancor Americas")

and Kancor Ingredients, Ltd. ("Kancor India") (collectively as "Plaintiffs or Kancor")'s and

Defendant ATC Ingredients, Inc. ("Defendant")'s Cross Motions for Summary Judgment under

Federal Rule of Civil Procedure 56 (Docs. 119, 111).  This is a suit brought by spice suppliers

Kancor Americas and Kancor India against ATC Ingredients, Inc. ("ATC"), an entity engaged to

sell Kancor spices in the United States.  Kancor asserts that it had a sales agreement with ATC to

distribute Kancor spices to customers for a commission fee that was negotiated between Kancor

and ATC.  Kancor asserts that under the sales agreement, it would send an invoice to ATC for

each transaction, and ATC would collect the spice customer sales price, deduct ATC's

commission fee and handling costs, and hold or remit the left over balance or "margins" back to

Kancor.  Kancor asserts, among other things, that ATC breached its contract by failing to remit

"margins" to Kancor.  Conversely, ATC denies it has a supplier sales contract with Kancor India,

or any obligation beyond transaction invoices, and ATC argues it had no contractual duty to

remit the "margins."  ATC argues that Kancor is liable for joint venture, tortious interference,

and other claims.

There are nine issues before the Court.  The first issue is whether Plaintiffs' claims for breach of contract (Count I), unjust enrichment (Count II), and conversion (Count III) are time-barred by the statute of limitations.  The Court **GRANTS** Plaintiffs' motion and **DENIES** Defendant's motion as to Defendant's statute of limitations defense because the Court finds that Plaintiffs' claims for breach of contract, unjust enrichment, and conversion (Counts I, II, and III, respectively) are not time-barred.

The second issue is whether, by refusing to pay Plaintiffs monies allegedly owed, Defendant breached any contractual obligation to Plaintiffs (Count I).  The Court **DENIES** Plaintiffs' and Defendant's motions as to Plaintiffs' claim for breach of contract (Count I) because a genuine issue of material fact exists with respect to whether a valid contract existed concerning Defendant's alleged obligation to surrender the "margins" to Plaintiff Kancor Ingredients, Ltd.

The third issue is whether Plaintiffs are entitled to assert a claim of unjust enrichment against Defendant where no express agreement existed for Defendant to remit to Plaintiffs the margins (Count II).  The Court **DENIES** Plaintiffs' and Defendant's motions as to Plaintiffs' claim for unjust enrichment (Count II) because a genuine issue of material fact exists with respect to whether an express or oral agreement existed for Defendant to remit the "margins" to Plaintiff Kancor Ingredients, Ltd. that would result in Defendant withholding more than the negotiated amount.

The fourth issue is whether Defendant wrongfully interfered with Plaintiffs' property rights under the theory of conversion (Count III).  The Court **DENIES** Plaintiffs' and Defendant's motions as to Plaintiffs' claim for conversion (Count III) because a genuine issue of

material fact exists as to whether the "margins" were part of an identifiable fund to which Plaintiff is entitled.

The fifth issue is whether the parties were involved in a joint venture as opposed to an agent-client relationship (Counterclaim II – specific performance, Counterclaim III – breach of contract, Counterclaim IV – unjust enrichment). The Court **GRANTS** Plaintiffs' motion and **DENIES** Defendant's motion as to Defendant's claims of specific performance (Counterclaim II), breach of contract (Counterclaim III), and unjust enrichment (Counterclaim IV) relating to the alleged joint venture because (1) Defendant has not come forward with evidence showing a genuine issue of material fact as to a joint venture relationship between the parties, (2) the Virginia Statute of Frauds bars Defendant's joint venture claims, and (3) Defendant's joint venture claims are time-barred.

The sixth issue is whether Defendant has provided any evidence of its trade secrets, Plaintiffs' misappropriation of said trade secrets, or any resulting damages (Counterclaim VI). The Court **GRANTS** Plaintiffs' motion and **DENIES** Defendant's motion as to Counterclaim VI, Defendant's trade secret claim, because Defendant has not provided any evidence of its trade secrets, evidence of Plaintiffs' misappropriation of said trade secrets, or evidence of any resultant damages.

The seventh issue is whether Plaintiffs tortiously interfered with Defendant's business expectancy (Counterclaim VII). The Court **GRANTS** Plaintiffs' motion and **DENIES** Defendant's motion as to Counterclaim VII, Defendant's claim for tortious interference with its business expectancy, because Plaintiff Kancor Ingredients, Ltd. is a party to the contract and cannot interfere with its own contract.

The eighth issue is whether Plaintiffs breached the purported distribution and resale agreements (Counterclaim I) or its implied covenant of good faith and fair dealing owed to Defendant (Counterclaim V).  The Court **GRANTS** Plaintiffs' motion and **DENIES** Defendant's motion on Defendant's claim for breach of contract as to the purported distribution and resale agreements (Counterclaim I) and on Defendant's claim that Plaintiffs breached their duty of good faith and fair dealing (Counterclaim V) because Defendant presents no evidence of the contract or of Plaintiffs' duty or breach.

The ninth issue is whether Plaintiffs' Amended Complaint states a claim for prayer for punitive damages.  The Court **GRANTS** Defendant's motion as to Plaintiffs' prayer for punitive damages because punitive damages are not available for breach of contract claims.

## I.      BACKGROUND

### A.      The Parties

Plaintiff Kancor Americas, Inc. ("Kancor Americas") is a company organized and existing under the laws of New Jersey (Doc. 76).  Kancor Americas is a wholly owned subsidiary of Kancor India.  *Id.*  Plaintiff Kancor India is a company organized and existing under the laws of India with its principal place of business in India.  *Id.*  Kancor India manufactures spices, spice extracts, essential oils, mints, menthol, and other commodities for import and sale throughout the world.  *Id.*

Defendant ATC Ingredients, Inc. ("ATC") is a company organized and existing under the laws of Virginia with its principal place of business in Virginia.  *Id.*

### B.      Plaintiff Kancor and Defendant ATC's business relationship

In or around 2006, Kancor India and ATC began their business relationship (Doc. 76).  Kancor India entrusted ATC with its name, reputation, resources, and products.  *Id.*  Kancor

India offered trainings to ATC both in business and in products, and Kancor India accompanied ATC on visits to clients. *Id.* Throughout their business relationship, ATC served as a sales agent for Kancor India's spices and other goods. *Id.* Before any sale was made, customers would work with Kancor India to ensure that the spices and other goods they sought to order met the specifications that they desired. *Id.* To meet these specifications, Kancor India used its extensive experience and resources to engineer the desired spices and other goods. *Id.*

During their eight-year business relationship, the parties agreed upon a course of business dealings (Doc. 76). Kancor India set the final prices of the spices and other goods for the customer, and ATC did not have the right to quote a price to the customer. *Id.* Customers would then pay ATC, and in turn, ATC would pay Kancor India the amount of the invoice less a commission. *Id.* The parties set Defendant's sales commission on a case-by-case basis for each transaction (Doc. 147). ATC's commission plus several handling charges were deducted from the final price (Doc. 173). The difference that ATC received from the customer would serve against these charges. *Id.*

Kancor India directly instructed ATC on which customers to pursue for the sale of Kancor India' products (Doc. 147). ATC always disclosed to Kancor India complete details regarding customers (Doc. 120). At no point was there any explicit agreement between Kancor India and ATC to form a joint venture (Doc. 76).

## C.    Decline of Kancor India and ATC's business relationship

In or around 2009, ATC began to seek to secure larger accounts and customers (Doc. 76). ATC began working with third-party vendors in addition to working with Kancor India. *Id.* Kancor India management agreed to a non-exclusive relationship. *Id.* Thereafter, ATC dealt with these third-party vendors for specific products and stopped doing business with Kancor

India with respect to these products. *Id.* Around that time, ATC also developed a relationship with Kancor India's sister company, VKL Seasoning Pvt. Ltd. ("VKL"). *Id.* However, when Olam International ("Olam") acquired VKL in November 2011, Olam decided it would no longer work with ATC. *Id.* ATC then began to work with a number of Kancor India's competitors. *Id.* Fearing that ATC would leak information about Kancor India's customers and business strategy, Kancor India reduced its business dealings with ATC. *Id.*

## D.     Kancor Americas, Inc. Is Formed

On November 6, 2013, Kancor Americas was launched and incorporated with its headquarters in Morristown, New Jersey (Doc. 76). Kancor Americas established a number of warehouses around New Jersey. *Id.* Some of the spices for transactions at issue were shipped from these warehouses to customers who purchased Kancor spices through ATC. *Id.*

## E.     Legal Actions and Allegations

Plaintiffs Kancor India and Kancor Americas allege that Defendant ATC owes Plaintiffs roughly $650,000 (Doc. 76). Plaintiffs now bring this lawsuit alleging three claims. First, under Count I, Plaintiffs allege that by refusing to pay Kancor India the "margins," [1] Defendant breached its contractual obligations to Kancor India. *Id.* Second, under Count II, Plaintiffs assert an unjust enrichment claim against Defendant because Defendant would be unjustly enriched if allowed to keep the "margins" or proceeds. *Id.* Third, under Count III, Plaintiffs argue that Defendant withheld funds from Kancor India under the theory of conversion. *Id.*

ATC asserts seven causes of action in its counterclaim and third-party complaint. First, under Counterclaim I, ATC asserts that Kancor India breached its 2006 and 2009 agreements

---

[1]      The "margins" are defined as the difference between the invoice ATC sent to its customers ("ATC Invoice") less its "sales commission" and handling charges, and the invoice Kancor India sent to ATC (the "Kancor Invoice") (Doc. 112).

with ATC for distribution and resale (Doc. 19).  Second, under Counterclaim II, ATC alleges that the 2006 and 2009 Agreements created a joint venture between Kancor India and ATC for the distribution, resale, and marketing of Kancor products in the United States, and ATC requests that the Court order Kancor India to comply with the purported joint venture agreement.  *Id*. Third, under Counterclaim III, ATC asserts that Kancor India breached the joint venture agreement.  *Id.*  Fourth, under Counterclaim IV, ATC alleges that Kancor India was unjustly enriched when it failed to reconcile inventory issues and repay ATC for items it allegedly removed from ATC's inventory.  *Id.*  Fifth, under Counterclaim V, ATC asserts that Kancor India breached its duty of good faith and fair dealing toward ATC when it interfered with ATC's customer relationships, reduced ATC's discount below 5%, converted ATC's inventory for its own benefit, transferred the sale of its products in the United States to Kancor Americas, and failed to issue to ATC the 10% ownership in Kancor Americas.  *Id.*  Sixth, under Counterclaim VI, ATC asserts that Kancor India misappropriated trade secrets from ATC, shared them with Kancor Americas, and continues to use ATC's trade secrets.  *Id.*  Seventh, under Counterclaim VII,[2] ATC alleges that Kancor India tortuously interfered with ATC's business expectancy when it conveyed ATC's trade secrets to Kancor Americas and intentionally interfered with ATC's customer relationships.  *Id.*

Plaintiffs argue that their Motion for Summary Judgment should be granted for four reasons (Doc. 120).  First, Plaintiffs argue that the Court should grant summary judgment on Defendant's Joint Venture claims for specific performance (Counterclaim II), breach of contract (Counterclaim III), and unjust enrichment (Counterclaim IV), because no meeting of the minds occurred between the Parties regarding the formation of a joint venture.  *Id.*  Second, Plaintiffs

---

[2]       Counts VII  in Defendant's counterclaim and third-party complaint are incorrectly numbered as V (Doc. 19).

argue that the Court should grant summary judgment on Defendant's Trade Secret claim (Counterclaim VI) because Defendant cannot establish the existence of any trade secrets, misappropriation, or damages relating to said misappropriation. *Id.* Third, Plaintiffs argue that the Court should grant summary judgment on Defendant's tortious interference claim (Counterclaim VII) because Defendant cannot establish the first three elements of tortious interference. *Id.* Fourth, Plaintiffs argue that the Court should grant summary judgment on Defendant's Breach of Contract (Counterclaims I) and Breach of Good Faith and Fair Dealing claims (Counterclaim IV) because Defendant has not pointed to any agreement to show that Kancor India is responsible for Defendant's leftover inventory and because Defendant cannot prove its inventory damages. *Id.*

In response, Defendant brings a cross Motion for Summary Judgment seeking damages and specific performance (Doc. 111). In addition to the counter arguments asserted against Plaintiffs' claims, Defendant also asserts that its Motion for Summary Judgment should be granted for four additional reasons (Doc. 112). First, Defendant alleges that Plaintiffs' claims for specific performance (Counterclaim II), breach of contract (Counterclaim III), and unjust enrichment (Counterclaim IV) are barred because the parties were engaged in a joint venture. *Id.* Second, Defendant alleges that Plaintiffs misappropriated Defendant's trade secrets (Counterclaim VI). *Id.* Third, Defendant alleges that Plaintiffs tortiously interfered with Defendant's business expectancy (Counterclaim VII). *Id.* Fourth, Defendant alleges that Plaintiffs breached the purported distribution and resale agreements (Counterclaim I) and breached their duty of good faith and fair dealing (Counterclaim V). *Id.*

## II.      STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c) (2013).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmoving party.  *Boitnott v. Corning, Inc.,* 669 F.3d 172, 175 (4th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)).  Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 522 (4th Cir. 2003) (citations omitted).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Emmett v. Johnson,* 532 F.3d 291, 297 (4th Cir. 2008) (quoting *Anderson,* 477 U.S. at 247-48).

A "material fact" is a fact that might affect the outcome of a party's case.  *Anderson,* 477 U.S. at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.,* 264 F.3d 459, 465 (4th Cir. 2001).  Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson,* 477 U.S. at 248; *Hooven–Lewis v. Caldera,* 249 F.3d 259, 265 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor.  *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.,* 407 F.3d 631, 635 (4th Cir. 2005) (quoting *Anderson,* 477

U.S. at 248).  Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

## III.   ANALYSIS

The Court grants in part and denies in part Plaintiffs' Motion for Summary Judgment and Defendant's Motion for Summary Judgment for numerous reasons.  First, the Court finds that Plaintiffs' claims for breach of contract (Count I), unjust enrichment (Count II), and conversion (Count III) are not time-barred by the statute of limitations.  Second, there is a genuine issue of material fact as to the existence of a contract between the parties for the "margins" or proceeds (Count I).  Third, a genuine issue of material fact exists as to Plaintiffs' claim that Defendant was unjustly enriched (Count II) because no express agreement existed for Defendant to remit the margins.  Fourth, Plaintiffs have not provided sufficient evidence that Defendant held Kancor India's monies in trust (Count III).  Fifth, the parties were not involved in a joint venture; they merely had an agent-client relationship (Counterclaim I – specific performance) (Counterclaim II – breach of contract) (Counterclaim III – unjust enrichment).  Sixth, Defendant has not provided any evidence of its trade secrets, evidence of Plaintiffs' misappropriation of said trade secrets, or evidence of any resulting damages (Counterclaim VI).  Seventh, Plaintiffs did not tortiously interfere with Defendant's business expectancy (Counterclaim VII).  Eighth, Defendant presents no evidence of the breach of the purported distribution and resale agreements (Counterclaim I) or of Plaintiffs' implied covenant of duty of good faith and fair dealing owed to Defendant (Counterclaim V).  Finally, the Court denies Plaintiffs' prayer for punitive damages because punitive damages are not available for breach of contract claims.

A.      **Plaintiffs' Claim is Not Time-Barred**

1.      **Defendant's continuing breach theory is inapplicable**

The Court denies Defendant's claim that Plaintiffs' causes of action for breach of contract (Count I), unjust enrichment (Count II), and conversion (Count III) are time-barred by the statute of limitations because each potential breach constitutes a separate and distinct occurrence that could give rise to separate claims.

Virginia Code § 8.01-246(4) provides a three-year statute of limitations for breach of any unwritten contract, express or implied, and Virginia Code § 8.01-243(B) provides a five-year statute of limitations for conversion.   Under Virginia law, the right of action is "deemed to accrue and the prescribed limitation period shall begin to run from the date . . . when the contract occurs."  Va. Code. Ann. § 8.01-230.  In order to calculate the date from which the limitation shall run, the Court must first determine whether there was one breach or a series of breaches, as evidenced by the facts of the case.  *Am. Physical Therapy Assoc. v. Fed'n of State Bds. of Physical Therapy*, 628 S.E.2d 928, 929 (Va. 2006).  The party raising the statute of limitations as an affirmative defense must prove that the other party's claims are time barred.  *Heirs of Roberts v. Coal Processing Corp.*, 369 S.E.2d 188, 190 (Va. 1988).

Under the continuing breach theory, "[w]hether the [defendant]'s actions constituted a single continual breach . . . or a series of separate breaches . . . depends upon the relevant facts." *Hunter v. Custom Bus. Graphics,* 635 F. Supp. 2d 420, 431 (E.D. Va. 2009).  The continuing breach theory applies where "the wrongful act is of a permanent nature and . . . produces 'all the damage which can ever result from it . . . .'"  *Hampton Roads Sanitation Dist. v. McDonnell*, 360 S.E.2d 841, 843 (Va. 1987).  If so, "the entire damages must be recovered in one action."  *Id*. However, "if the wrongful acts are not continuous and 'occur only at intervals, each occurrence

inflicts a new injury and gives rise to a new and separate cause of action.'" *Am. Physical Therapy Assoc.*, 360 S.E.2d at 844 (quoting *Norfolk v. W. Ry. Co. v. Allen*, 87 S.E. 558 (Va. 1915)).

Plaintiffs assert three claims against Defendant for breach of contract (Count I), unjust enrichment (Count II), and conversion (Count III) (Doc. 76).   At the time of the breach, Defendant allegedly failed to remit the margins on its very first sale of product to client Wild Flavors (Doc. 112).

Defendant argues that Plaintiffs' claims are time-barred (Doc. 112).   Defendant argues that under the continuing breach theory, regardless of which statute of limitation applies, either Virginia Code § 8.01-246(4)'s three-year statute of limitations for breach of any unwritten contract, express or implied, or Virginia Code § 8.01-243(B)'s five-year statute of limitations for conversion, Plaintiffs' claims are time-barred as the alleged breach occurred in late 2006 or early 2007, roughly eight years ago.   In other words, Defendant argues that for the purpose of calculating the statute of limitations, the first alleged breach is the *only* breach, and Plaintiffs' claims are therefore untimely.

The Court, however, finds that each breach constitutes a separate and distinct occurrence that gives rise to separate claims (Doc. 147).   *See also Hampton Roads*, 360 S.E.2d at 843 (1987) (holding that the continuing breach theory is inapplicable and premature in circumstances where harm can still occur).   The evidence shows that Plaintiffs set Defendant's sales commission on a case-by-case basis for each transaction (Doc. 147).   Plaintiffs seek to recover monies that Defendant has allegedly withheld in these separate transactions (Doc. 147).   There were numerous sales to customers over several years.   The first alleged breach could not have caused and did not cause "all the damage" possible.   In other words, each time Defendant allegedly

withheld more than its agreed-upon commission from sales proceeds, it committed a new potential breach (Doc. 147).

Accordingly, the Court grants Plaintiffs' Motion for Summary Judgment and denies Defendant's Motion for Summary Judgment as to Defendant's defense that Plaintiffs' claims are time-barred because Defendant's alleged failure to transfer sufficient funds to Plaintiffs in connection with each transaction is a new potential breach that inflicted a new injury. As such, Plaintiffs' claims are not time-barred by the statute of limitations.

> **2.     Plaintiffs are not equitably estopped from asserting these claims, and Plaintiffs have not waived their right to assert these claims**

The Court finds that Plaintiffs are not equitably estopped from asserting their claims, nor have Plaintiffs waived their right to do so by waiting to bring these claims. Plaintiffs' delay in bringing these claims may have been caused by Defendant's alleged misrepresentations, which, in turn, equitably estop Defendant from raising its statute of limitations defense against Plaintiffs.

The doctrine of equitable estoppel precludes a defendant from raising a statute of limitations defense when the defendant's own misrepresentations caused the plaintiff's delay in bringing suit. *City of Bedford v. James Leffel & Co.*, 558 F.2d 216, 218 (4th Cir. 1977). To establish that equitable estoppel defeats the application of the statute of limitations, "[i]t is sufficient [to show] that the aggrieved party reasonably relied on the words and conduct of the person to be estopped in allowing the limitations period to expire." *Id*.

Defendant argues that Plaintiffs are equitably estopped from asserting their claims and that Plaintiffs waived their claims because they waited too long (Doc. 112). Since 2012, Plaintiffs requested that Defendant conduct a "reconciliation" of accounts and determine the amount of leftover proceeds it owed to Kancor India, to which Defendant did not object.

Defendant allegedly concealed that it had withheld more than its share of commissions for several years (Doc. 147).  Critically, Defendant was the only party in possession of information and documentation necessary to reconcile the accounts.  *Id.*  Further, Defendant is the only party that knew its expenses for warehousing, transportation, shipping, and damage to products.  *Id.*  However, Plaintiffs allege Defendant did not disclose to Kancor India that a significant amount of money was left over from the sales proceeds after Defendant's costs and commission were deducted from the final sales price.  *Id.*  Based on these facts, a reasonable jury may easily find that Defendant misled Kancor India about the payment of the leftover sales proceeds.  In other words, Defendant is equitably estopped from raising the statute of limitations defense because Defendant allegedly misrepresented the finances to Kancor India for several years, but once Kancor India discovered those misrepresentations, Plaintiffs sued Defendant.

Accordingly, the Court finds Defendant's argument meritless because even if Defendant had carried its burden of showing that the statute of limitations has expired for Plaintiffs' claims, Defendant would not be entitled to summary judgment.  *See City of Bedford*, 558 F.2d at 218-20 (reversing summary judgment where the jury would have found that a buyer of defective machinery reasonably relied on the seller's promise to rectify the problems and thus did not file suit earlier).  Therefore, the Court grants Plaintiffs' Motion for Summary Judgment and denies Defendant's Motion for Summary Judgment as to Defendant's defense that Plaintiffs' claims are time-barred.

**B.    There is a Genuine Issue of Material Fact as to Whether There Was a Contract Requiring ATC to Hold, Account For, and to Remit Funds or "Margins" to Plaintiffs**

The Court denies Plaintiffs' and Defendant's Motions for Summary Judgment as to Plaintiffs' claim for breach of contract (Count I) because a genuine issue of material fact exists

as to whether the parties entered into an agreement and valid contract concerning Defendant's duty to remit to Plaintiffs the margins.

To establish breach of contract, the plaintiff must first establish the existence of a valid contract. *Sykes v. Brady-Bushey Ford, Inc.,* 69 Va. Cir. 219, 219 (2005). The essential elements of a valid contract are offer, complete acceptance, and valuable consideration. *Id.* There must be "mutual assent of the contracting parties to terms reasonably certain under the circumstances" for the contract to be legally enforceable. *Devil's Advocate, LLC v. Zurich Am. Ins.*, No. 1:13-CV-1246, 2014 WL 5161197, at *5 (E.D. Va. Oct. 10, 2014) (quoting *Allen v. Aetna Cas. & Sur. Co.,* 281 S.E.2d 818, 820 (Va. 1981). As a result, offer, acceptance, and consideration must be present to support a binding compromise settlement. *Montagna v. Holiday Inns, Inc.*, 269 S.E.2d 838, 844 (Va. 1980).

Defendant argues that it is entitled to judgment as a matter of law because no consideration, and therefore no valid contract, would exist for Plaintiffs' attempt to unilaterally modify the parties' agreement to retroactively invoice Defendant (Doc. 112). According to Defendant, "no valid contract exists that would allow Kancor India to issue invoices for and receive payment on these retroactive billings." *Id.* However, Plaintiffs are not attempting to "retroactively bill" Defendant (Doc. 147). Instead, Plaintiffs argue that Defendant breached a contemporaneous, existing contractual obligation by refusing to pay Kancor India the monies owed as determined by the terms of an alleged contract. *Id.* The issue here is the existence of a contract between Plaintiffs and ATC concerning the margins.

Defendant argues that Kancor India's invoices are the complete sales contracts and that no valid contract existed concerning the obligation for Defendant to remit to Kancor India the sums earned from customers in excess of its agreed-upon commission plus expenses (Doc. 176).

Plaintiffs conversely argue that the parties created an enforceable contract pertaining to the margins through email communications between Kancor India and ATC stating that the difference between the amount that Defendant received from the customer and Defendant's commission and charges would serve against Defendant's handling charges (Doc. 173).

Plaintiffs fail to provide uncontroverted evidence to show mutual assent to Defendant's alleged duty to remit the margins, and there is conflicting evidence with respect to any contract concerning this duty.[3] The record reflects numerous e-mail communications between the parties in which the parties agree on specific commission rates for Defendant in given transactions (Doc. 147). The emails also show that Plaintiff Kancor India asked Defendant to report its expenses against the proceeds collected from customer and to submit several accounting reports. *Id.* However, the emails lack any mention of a situation involving surplus funds. In an email communication, Kancor India states that the difference Defendant receives from the customer would serve against the charges incurred by sales (Doc. 112-11). However, the email fails to mention what Defendant should do with any money received that is in excess of the commission plus expenses. *Id.* As a result, a genuine issue of material fact exists as to whether that there was mutual agreement, and therefore a valid contract, for Defendant to transfer to Plaintiff Kancor India any money received from sales in excess of the commission and charges.

---

[3]   Defendant argues that Plaintiffs' use of Defendant's 2014 agreement to send Kancor India money in several installments is inadmissible as a settlement negotiation (Doc. 176). Under Federal Rule of Evidence 408, conduct or statements made during compromise negotiations about the claim may not be admissible on behalf of any party either to prove or disprove the validity or amount of a disputed claim. Fed. R. Evid. 408(a)(2). However, in this case, there was no claim at the time of the discussions because no dispute existed at the time regarding the leftover sums (Doc. 173). Defendant did not send a litigation threat letter until several months after the discussions. *Id.* Therefore, these discussions and the intended payment of an installment may be used as evidence.

Accordingly, the Court denies Plaintiffs' and Defendant's Motions for Summary Judgment as to Count I because a genuine issue of material fact exists as to whether the parties had a valid contract regarding the transfer of the margins.

### 1.     The parties' business relationship continued into 2014

The Court finds that a genuine issue of material fact exists as to the parties' relationship through 2014.  Plaintiffs argue that their damages arise from Defendant's alleged failure to pay margins from 2010 through at least 2014 (Doc. 112).  Defendant argues that Kancor America and Defendant had no agreement during that time.  *Id.*  Defendant submits that after Kancor America started operations, Defendant purchased Kancor products through Kancor America, not Kancor India; therefore, Kancor India has no breach of contract claim against Defendant for the period it was purchasing from Kancor America.

However, Defendant's argument it is not developed and lacks sufficient citations to the record (Doc. 147).  Defendant does not cite to any evidence that would lead a jury to reasonably conclude that Defendant was not engaged in a business relationship with Plaintiff Kancor India up until 2014.  Defendant has only cited to Exhibit 32 to support its argument, but Exhibit 32 in fact shows that after January 1, 2014, Defendant was still conducting business with Kancor India (Doc. 112).

Accordingly, the Court holds that Defendant's argument raises a dispute of fact that cannot be resolved at summary judgment.  Therefore, Plaintiffs' and Defendant's Motions for Summary Judgment as to Count I are denied.

**C.      Plaintiffs Properly Assert Their Unjust Enrichment Claim.   However, a Genuine Issue of Material Fact Exist as to Whether the Parties Entered into a Contract Concerning the Margins**

The Court grants in part and denies in part Plaintiffs' Motion for Summary Judgment and denies Defendant's Motion for Summary Judgment as to Count II because while Plaintiffs are entitled to raise the argument of unjust enrichment as an alternative theory of relief, a genuine issue of material fact exists as to whether an express agreement existed for Defendant to remit the margins that would result in Defendant withholding more than the negotiated amount.

**1.      Plaintiffs are entitled to raise the argument of unjust enrichment as an alternative theory of relief**

The Court finds that Plaintiffs properly raise the alternative argument of unjust enrichment (Count II) in their Complaint.   Under Virginia law, a plaintiff alleging the existence of a quasi-contract and unjust enrichment must satisfy three elements:   (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation or knowledge of the benefit by the defendant, and (3) retention of that benefit by the defendant in circumstances which would make it inequitable for the defendant to retain the benefit without reimbursing the plaintiff for the value received. *Nossen v. Hoy*, 750 F. Supp. 740, 744 (E.D. Va. 1990).

First, Defendant argues that a claim for unjust enrichment is not available to Plaintiffs because Plaintiff Kancor India and Defendant had an "express agreement" that was satisfied when Defendant paid the invoices; therefore, Plaintiffs must seek a remedy pursuant to the agreement (Doc. 112).   In other words, Defendant posits that an implied contract claim cannot stand where there is an express contract.   Here, however, Plaintiffs are entitled to advance a competing and alternative theory at trial and ask the jury that even if they find that the parties did not have an express or implied agreement, Defendant should still repay sums that it has wrongfully withheld from Plaintiff Kancor India because Defendant would be unjustly enriched

if allowed to keep the monies owed to Kancor India.  *See Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp*., 961 F.2d 489, 490 (4th Cir. 1992) (noting that two alternative theories, breach of contract and quantum meruit, were tried to a jury).  Therefore, the Court finds that Plaintiffs are entitled to raise the argument of unjust enrichment as an alternative theory of relief.

Thus, the Court grants Plaintiffs' Motion for Summary Judgment and denies Defendant's Motion for Summary Judgment as to Count II because Plaintiffs are entitled to raise unjust enrichment as an alternative theory at trial.

**2.      Plaintiffs are not entitled to summary judgment on its unjust enrichment claim**

The Court finds that there is a genuine issue of material fact as to whether Defendant was unjustly enriched because it is unclear if the parties entered into a contract concerning the margins.

Defendant argues that in issuing invoices, Kancor India sold its products to Defendant and should not be allowed to "force [Defendant] to pay a second time for products it has already purchased and resold" (Doc. 112).  Defendant's argument assumes that the invoices sent from Plaintiff Kancor India to Defendant form the extent of the parties' agreement and that Defendant's payment of the invoices fulfilled the terms of their contract.  However, as stated above, there is a genuine issue of material fact with respect to whether the invoices formed the entirety of the parties' contract or whether the parties entered into an agreement for Defendant to remit the margins.

Accordingly, the Court denies Plaintiffs' and Defendant's Motions for Summary Judgment as to Plaintiffs' unjust enrichment claim (Count II) because a genuine dispute of material fact exists as to whether Defendant was obligated to remit the margins.

D.    **Defendant's Conversion of Plaintiffs' Property Rights**

The Court denies Plaintiffs' and Defendant's Motions for Summary Judgment as to Plaintiffs' claim for conversion (Count III) because a genuine issue of material fact exists as to whether the margins were part of an identifiable fund to which Plaintiff was entitled.

1.    **There is a genuine dispute of material fact as to whether the margins were part of an identifiable fund to which Plaintiff was entitled**

The Court finds that there is a genuine issue of material fact as to whether the alleged converted property, the margins, is specifically identifiable and as to whether Plaintiff was entitled to the margins.

Conversion is "any distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights, or inconsistent therewith." *Federal Ins. Co. v. Smith*, 144 F. Supp. 2d 507, 517-18 (E.D. Va. 2001) (quoting *Universal C.I.T. Credit Corp. v. Kaplan*, 92 S.E.2d 359, 365 (Va. 1956)).   A plaintiff asserting a conversion claim must prove by a preponderance of the evidence (i) ownership or right of possession at the time of conversion and (ii) the defendant's wrongful exercise of dominion or control over the plaintiff's property, depriving the plaintiff of possession. *Id.* at 518.

Under Virginia law, "money can only be the subject of a conversion claim in limited circumstances, including when it is part of a segregated or identifiable fund." *Stallard v. Bank of Am., N.A.*, No. 1:15-CV-416 LMB/JFA, 2015 WL 5579904, at *8 (E.D. Va. Sept. 22, 2015) (quoting *Jones v. Bank of Am. Corp.*, No. 4:09CV162, 2010 WL 6605789, at *5 (E.D. Va. Aug. 24, 2010)); *see also Opportunities Dev. Grp., LLC v. Andruss*, No. 1:14-CV-62, 2015 WL 2089841, at *9 (E.D. Va. Apr. 30, 2015) (quoting *McNamara v. Picken*, 950 F. Supp. 2d 193, 194 (D.D.C. 2013)) ("Money can be the subject of a conversion claim . . . if the plaintiff has the right to a specific identifiable fund of money.").   A segregated or identifiable fund is one

separate from the defendant's general funds and one to which plaintiff is entitled.  *See, e.g.* *Opportunities Development Group*, 2015 WL 2089841, at *9 (holding that the plaintiff had alleged sufficient facts to support a conversion claim when the defendant, a corporate officer, made unauthorized transactions for personal use with a company credit card that accessed a specific corporate bank account); *Stallard,* 2015 WL 5579904, at *8 (holding, under District of Columbia law, that the allegedly converted funds were not segregated or specifically identifiable because the money the plaintiff allegedly overpaid was not in any way separated from the other amounts he paid).  *See generally Allied Inv. Corp. v. Jasen*, 731 A.2d 957, 966 (Md. 1999) ("[C]onversion claims generally are "recognized in connection with funds that have been or should have been segregated for a particular purpose or that have been wrongfully obtained or retained or diverted in an identifiable transaction.").  Furthermore, a claim for conversion of funds will not lie when there is only a failure to repay by the defendant and the relationship between the parties is one of a debtor-creditor.  *See In re McKnew*, 270 B.R. 593, 642 n. 55 (Bankr. E.D. Va. 2001); *see also Goodrich v. E.F. Hutton Grp., Inc.*, 542 A.2d 1200, 1203 (Del. Ch. 1988) (stating that in Delaware, "[m]oney is subject to conversion only when it can be described or identified as a specific chattel, but not where an indebtedness may be discharged by the payment of money generally").

Defendant relies heavily on *Airlines Reporting Corp. v. Pishvaian* to argue that Plaintiffs' claim for conversion cannot lie because the parties' relationship was that of a debtor-creditor rather than that of an agent-principal (Doc. 112).  In *Airlines Reporting*, the parties had an agreement that provided that the defendant would hold blank ticket stock "in trust" for plaintiff. 155 F. Supp. 2d 659, 662 (E.D. Va. 2001).  In addition to the ticket stock, the agreement allowed defendant to withdraw sales proceeds, minus a commission, from a bank account that the

plaintiff designated for this specific purpose.  *Id.*  The defendant could comingle these sales proceeds with its other company funds.  *Id.*  An audit by the plaintiff revealed that the defendant was selling tickets, collecting money for the sale of those tickets, and then failing to report the sales to the plaintiff.  *Id.* at 663.  In analyzing whether the plaintiff could assert a claim for conversion over the sales proceeds, the court held that a showing that the defendant held the proceeds "in trust" would establish the first element of conversion, namely ownership or right of possession of the funds.  *Id.* at 664.  Absent a showing that sales proceeds were held in trust, the court articulated that conversion cannot lie, and the relationship is merely that of a debtor-creditor.  *Id.*  In other words, where there is only a debtor-creditor relationship, an action for conversion of the funds representing the indebtedness cannot be brought against the debtor.  *Id.* As to the ticket stock, the court held that the defendant held the ticket stock "in trust" because the agreement laid out that the defendant held the stock in trust, that the ticket stock would be surrendered to the plaintiff on demand, and because the defendant could only issue the ticket stock in accordance with the agreement.  *Id.* at 665.  In addition, the defendant "wrongfully deprived plaintiff of possession of the ticket stock" when it issued the stock to customers contrary to the provisions laid out in the agreement.  *Id.*

This case differs fundamentally from *Airlines Reporting*.  In this case, unlike the parties in *Airlines Reporting*, there is no agreement regarding the margins to analyze the parties' intent as to whether the funds were to remain separate from Defendant's company funds, whether Defendant was to hold the money "in trust," or whether Defendant kept the proceeds contrary to any provisions laid out by the parties.  There is conflicting evidence regarding the nature of the parties' agreement and conduct with respect to the margins, and neither party has provided sufficient evidence to prove their position.  Most importantly, as stated above, the parties have

not offered into evidence an express agreement concerning Defendant to hold the margins in trust.  Therefore, it is unclear whether the parties intended Defendant to hold Kancor India's money in trust because no clear agreement existed as to any possible surplus funds.

Additionally, there is a genuine issue of material act as to whether the margins were part of a segregated or identifiable fund.  Defendant argues that Kancor India placed no restriction on Defendant's commingling or use of funds from customers and that Kancor India knew that Defendant was working with other vendors throughout their relationship (Doc. 112).   In response, Plaintiffs assert that while Kancor India allowed Defendant to mix payments from various customers, Defendant only used money obtained from customers to pay Kancor India and that Kancor India did not allow Defendant to pay invoices using Defendant's own money (Doc. 147).   In addition, Defendant argues that Plaintiffs cannot prove ownership or right of possession over the margins at the time of conversion because Kancor India did not control Defendant's collection and handling of the funds.  *Id.*  Therefore, a genuine issue of material fact exists as to whether the margins were a segregated fund to which plaintiff is entitled or whether Defendant could comingle the allegedly converted funds with its own company funds.

Accordingly, the Court denies Plaintiffs' and Defendant's Motions for Summary Judgment as to Plaintiffs' claim for conversion (Count III) because a genuine issue of material fact exists with respect to whether the alleged converted property, the margins, is specifically identifiable.

### 2.  A genuine issue of material fact exists as to whether Kancor India consented to any potential conversion

The Court finds that there is a genuine issue of material fact as to whether any conversion occurred to which Kancor India could consent.

23

Defendant further argues that Plaintiffs should not be able to assert their conversion claim because Kancor India impliedly consented to Defendant's control over the leftover proceeds (Doc. 112). Kancor India regularly invoiced Defendant. *Id.* According to Defendant, because Kancor India did not object to Defendant's retention of the excess sums, Kancor India complicity consented to Defendant's interference and Defendant has not exercised "wrongful control" (Doc. 112). However, the starting point of the consent analysis is whether Defendant converted Kancor India's property, which as stated above, is a question of material fact.

Accordingly, this disputed issue is left for trial upon resolution of Plaintiffs' conversion claim. Thus, the Court denies Plaintiffs' and Defendant's Motions for Summary Judgment as to Plaintiffs' conversion claim (Count III) because there is a genuine issue of material fact as to whether any conversion transpired to which Kancor India could consent.

**E.      Plaintiffs Have Established that Parties Were Not Engaged in a Joint Venture**

The Court grants Plaintiffs' Motion for Summary Judgment and denies Defendant's Motion for Summary Judgment as to Defendant's claims of specific performance (Counterclaim II), breach of contract (Counterclaim III), and unjust enrichment (Counterclaim IV) relating to an alleged joint venture for four reasons. First, no reasonable jury can find a meeting of the minds between Defendant and Plaintiff Kancor India regarding the formation of a joint venture. Second, the Virginia Statute of Frauds bars Defendant's joint venture claims. Third, Defendant cannot prove its requested damages. Finally, Defendant's joint venture claims are time-barred.

Counterclaim II requests specific performance as to its purported 10% stake in Kancor Americas, asserting that Kancor India, in violation of the joint venture, did not convey to Defendant its 10% interest (Doc. 19). Counterclaim III brings a breach of contract claim as to the same failure of Kancor India to convey to Defendant its alleged 10% stake in Kancor

Americas.  *Id.*  Counterclaim IV states that Kancor India was unjustly enriched when Kancor India failed to convey to Defendant the 10% stake after Defendant rendered a benefit to Kancor India under the assumption that it would receive the interest in Kancor Americas.  *Id*.  Defendant states that it believes its damages for the alleged joint venture claims are in excess of ten million dollars.  *Id.*

> **1.     No meeting of the minds exists between Defendant and Plaintiff Kancor India regarding the formation of a joint venture**

The Court finds no meeting of the minds between the parties regarding the formation of a joint venture.  Under Virginia law, "[a] joint venture is established by contract, express or implied, where two or more persons jointly undertake a specific business enterprise for profit, with each to share in the profits or losses and each to have a voice in the control and management."  *Ortiz v. Barrett*, 278 S.E.2d 833, 840 (Va. 1981).  Applying Virginia law, the Fourth Circuit has deemed critical to the formation of a joint venture contract the presence of two elements:  (1) an "agreement to share in the profits or losses," and (2) that each of the partners in the alleged venture "ha[s] a voice in the control and management."  *Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 539 (4th Cir. 1988) (quoting *Ortiz*, 278 S.E.2d at 840).

Defendant argues that the parties were engaged in a joint venture and that a reasonable jury could find in favor of the joint venture's existence (Doc. 140).  If a jury were to find in favor of the existence of a joint venture, Defendant would be able to assert its claim of specific performance (Counterclaim II) against Plaintiffs.  However, here, several years of e-mail communications between Defendant's CEO and Plaintiff Kancor India affirmatively disproves Defendant's allegation that it entered into a joint venture agreement with Kancor India.  Further, Defendant cannot point to any document that would permit a reasonable jury to find that the parties entered into a joint venture agreement (Doc. 120).  The only evidence presented by

Defendant is an agent letter drafted in 2006 and a questionnaire drafted in 2009. Defendant argues that both documents evince the formation of a joint venture agreement (Doc. 140). However, neither document is what Defendant claims. *Id.* The February 2006 letter says nothing about a joint venture. *Id.* Further, the questionnaire cannot be construed as an agreement because it in fact shows that the parties at best discussed – but did not agree on – the formation of a subsidiary in the United States.

Accordingly, the Court holds that Defendant's claims of specific performance (Counterclaim II), breach of contract (Counterclaim III), and unjust enrichment (Counterclaim IV) relating to the alleged joint venture fail because no reasonable jury can find a meeting of the minds between Defendant and Plaintiffs regarding the formation of a joint venture. Therefore, Plaintiffs' Motion for Summary Judgment is granted and Defendant's Motion for Summary Judgment is denied as to Defendant's joint venture claims.

### 2.      The Virginia Statute of Frauds bars Defendant's joint venture claims

The Court finds that the Virginia Statute of Frauds bars Defendant's claims of specific performance (Counterclaim II), breach of contract (Counterclaim III), and unjust enrichment (Counterclaim IV) relating to the alleged joint venture. Under Virginia's statute of frauds, an action for breach of an alleged contract that cannot be performed within a year is barred unless "a promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, is in writing and signed by the party to be charged." Va. Code Ann. § 11-2. Further, to comply with the Statute of Frauds, there must exist a writing that (1) evidences a contract for the sale of goods; (2) is signed by the party against whom it is to be enforced; and (3) specifies the quantity of the goods to be sold. *Silverman v. Bernot*, 239 S.E.2d 118, 121 (Va.

1977) (stating that "when it appears by the whole tenor of an agreement not in writing that it is to be performed after the first year, then the contract is within the statute and must be in writing").

Defendant points to the same two documents to support its argument here (Doc. 19). Defendant argues that the February 2006 agent letter created a joint venture between Defendant and Plaintiffs. *Id*. Defendant further argues that among other things, Kancor India acknowledged the joint venture by signing an August 22, 2006 Confidentiality Agreement on behalf of "ATC Kancor Ingredients Ltd." with one of ATC's customers. *Id*. In addition, Defendant argues that in the questionnaire issued on February 23, 2009, Kancor India requested information from ATC regarding the "Kancor ATC subsidiary and operations in the US." *Id*.

Here, Defendant has not identified how any of the aforementioned documents evidence the formation of a joint venture agreement  (Doc. 120).  The documents may suggest that Kancor India considered "in due diligence stage" the formation of a United States subsidiary with an entity perhaps other than Defendant, but nothing more. *Id*.  As seen in the *Orteck* case, these communications do not constitute a signed writing sufficient to satisfy the Statute of Frauds. *See Orteck*, 704 F. Supp. 2d 499, 513 (D. Md. 2010) (holding that an email fails to meet the Statute of Frauds bar for lack of specificity).

Accordingly, the Court holds that Defendant's allegations fail because the document and email communications presented are insufficient to meet the Virginia Statute of Frauds bar. Therefore, Plaintiffs' Motion for Summary Judgment is granted and Defendant's Motion for Summary Judgment is denied as to Defendant's claims of specific performance (Counterclaim II), breach of contract (Counterclaim III), and unjust enrichment (Counterclaim IV) relating to the alleged joint venture.

### 3.      Defendant cannot prove its requested damages

The Court finds that Defendant cannot prove its requested damages as to its claims of specific performance (Counterclaim II), breach of contract (Counterclaim III), and unjust enrichment (Counterclaim IV) relating to the alleged joint venture.  This Court has made clear that "[a] party generally cannot recover profits from new business because new businesses are speculative:  a new business relies on unestablished variables such as future bargains, market status, and other contingencies that do not allow the Court to fix the measure of damages." *Vienna Metro LLC v. Pulte Home Corp.*, 786 F. Supp. 2d 1076, 1086 (E.D. Va. 2011) (Lee, J.). In addition, a plaintiff "must prove that the defendant's breach actually and proximately caused the claimed damages.  Plaintiff must prove damages with reasonable certainty; contingent, speculative, and uncertain damages are not recoverable . . . ." *Id.*

In this case, Defendant seeks "in excess of $17.3 million" for an alleged 10% ownership in Kancor Americas – a new business entity that began operations in 2013 and ceased to operate in September 2015 (Doc. 140-47).  Defendant also seeks damages totaling an estimated $435,000 for "lost revenue from Kancor America market sales/ lost revenue from clients."  *Id.*  Defendant points to the testimony of its CEO and its fourth supplemental interrogatory responses to show its methodology for computing various damages, including, but not limited to, the damages for its joint venture claims (Doc. 140).  Defendant asserts that it arrived at its damages calculation from its estimate valuation of Kancor America, which Defendant's CEO stated came from a "Business Opportunities" map that Kancor India's CEO showed him, Defendant's purported 10% interest in Kancor America, the lost revenue from Kancor America sales, Kancor India's annual projection of gross revenue from Defendant's clients, and other unnamed Kancor documents (Doc. 140).  However, Defendant's damages claims are purely speculative.

Defendant's CEO explained in his deposition testimony that the $17.3 million damages claim represents 10% of $173 million, which according to him "Kancor can make . . . down the road." (Doc. 140-10).  The "Business Opportunities" map that is the origin of the $173 million market estimation does not contain any realized figures, only projections and estimations (Doc. 120).[4]

The Court identifies at least six reasons why Defendant's damages calculation is fundamentally flawed.  First, as to Defendant's damages request arising from any interest in Kancor Americas, Defendant never submitted an expert report to substantiate its damages, and there is no evidence to suggest that Kancor Americas would actually earn the amount that is stated in the Business Opportunities map (Doc. 140-10).  Defendant's CEO stated that that he did not know how long it would take Kancor Americas to reach this amount, only that it could make $173 million "down the road."  *Id.*  Second, the Kancor Americas Business Opportunities map contains Plaintiffs' estimation of the total size of the spice and color market in the United States, not Kancor America's actual business (Doc. 120).  In fact, during its two years of operations, Plaintiff Kancor Americas never participated in the colors market, and Defendant itself has never done any business with Kancor India in that market sector.  *Id.*  Third, the market-size estimate in the business opportunities map is based on gross revenue, not profits, and Defendant has not provided any evidence regarding customary margins in the spice and color business.  *Id.*  Thus, even if Kancor Americas had gained 100% market share in both spice and color markets immediately, there is no reason to believe that Defendant's 10% share would lead to a profit in excess of $17.3 million.  *Id.*  Fourth, Defendant's damages calculation does not take into account the fact that in its two years of operations, Plaintiff Kancor Americas operated at a loss.  *Id.*

---

[4]   In its opposition, Defendant states that the reason its CEO could not testify about the "quantum of certain damages" in his deposition was because Plaintiffs' attorney "refused to accept or otherwise interrupted his answers" (Doc. 140).  This attempt to explain away the lack of evidentiary support is not persuasive.

Fifth, Defendant's damages calculation does not address the undisputed expert report of Dr. Mark Zyla, Plaintiffs' valuation expert report, who has opined that a 10% share in Kancor Americas would have no fair market value. *Id.* Sixth, it does not appear that Defendant has accounted for inflation or the present value of money. *Id.* In fact, Defendants' CEO testified that he does not know how long it would take Kancor Americas to allegedly make the profits that Defendant seeks to recover. *Id.*

Accordingly, the Court finds that Defendant's claims fail because Defendant cannot prove its requested damages. Therefore, Plaintiffs' Motion for Summary Judgment is granted and Defendant's Motion for Summary Judgment is denied as to Defendant's claims of specific performance (Counterclaim II), breach of contract (Counterclaim III), and unjust enrichment (Counterclaim IV) relating to the alleged joint venture.

### 4.    Defendant's joint venture claims are time-barred

The Court holds that Defendant's claims of specific performance (Counterclaim II), breach of contract (Counterclaim III), and unjust enrichment (Counterclaim IV) relating to the alleged joint venture are time-barred because they were filed after the applicable statute of limitations expired. In Virginia, the statute of limitations is three years for breach of an unwritten contract and five years for a written contract. Va. Code Ann. § 8.01-246.

Here, even if Defendant were able to overcome the aforementioned bars to its claims, Defendant's claims are still time barred. Plaintiffs argue that it is clear from the parties' communications that Defendant was aware at least since August 2009 that Plaintiff Kancor India did not believe that the parties had entered into a joint venture agreement (Doc. 120). Defendant's CEO explicitly stated in August 2009 that "[n]othing is really happening and we have not made any decisions or made any plans" with respect to the proposed joint venture (Doc.

120).  Mr. Jacob further acknowledged that he "never heard back from" Plaintiff Kancor India regarding his responses to the questionnaire."  *Id.*  Defendant did not assert its counterclaims until May 6, 2015, (Doc. 19), which is more than five years after Defendant was made aware that Kancor India did not believe that the parties had formed a joint venture.  Even if a jury were to find that a joint venture agreement had been formed, Defendant's claims would be time-barred.  Thus, Defendant claims ultimately fail because they are time barred.

Accordingly, the Court grants Plaintiffs' Motion for Summary Judgment and denies Defendant's Motion for Summary Judgment as to Defendant's claims of specific performance (Counterclaim II), breach of contract (Counterclaim III), and unjust enrichment (Counterclaim IV) relating to the alleged joint venture for four reasons.  First, no reasonable jury can find a meeting of the minds between Defendant and Plaintiff Kancor India regarding the formation of a joint venture.  Second, the Virginia Statute of Frauds bars Defendant's joint venture claims.  Third, Defendant cannot prove its requested damages.  Finally, Defendant's joint venture claims are time-barred.

## F.    Defendant Fails to Establish Trade Secret Misappropriation

The Court grants Plaintiffs' Motion for Summary Judgment and denies Defendant's Motion for Summary Judgment as to Defendant's claim that Plaintiffs misappropriated Defendant's trade secrets (Counterclaim VI) for three reasons.  First, Defendant has not come forward with evidence showing that it had any trade secrets.  Second, Defendant cannot establish that Plaintiffs misappropriated said trade secrets.  Third, Defendant cannot prove any damages arising from the alleged trade secret misappropriation.

**1.      Defendant cannot establish that it had any trade secrets**

The Court finds that Defendant has not come forward with evidence showing that it had

any trade secrets.  The Virginia Uniform Trade Secrets Act ("VUTSA") prohibits "disclosure or

use of a trade secret of another . . . without express or implied consent" by a person who acquired

the trade secret "under circumstances giving rise to a duty to maintain its secrecy."  Va. Code

Ann. § 59.1-336.   To establish liability for trade secret misappropriation under VUTSA, a

claimant has to show (1) the existence of a trade secret and (2) the misappropriation of the trade

secret.  *Trident Prods. & Servs., LLC v. Canadian Soiless Wholesale, Ltd.*, 859 F. Supp. 2d 771,

778 (E.D. Va. 2012), *aff'd*, 505 F. App'x 242 (4th Cir. 2013).   "A plaintiff must identify, with

particularity, each trade secret it claims was misappropriated.  This must be done to allow the

finder of fact to distinguish that which is legitimately a trade secret from other information that is

simply confidential but not a trade secret, or is publicly available information."  *MicroStrategy*

*Inc. v. Bus. Objects, S.A.*, 331 F. Supp. 2d 396, 418 (E.D. Va. 2004); *see also Trandes Corp. v.*

*Guy F. Atkinson Co.*, 996 F.2d 655, 661 (4th Cir. 1993) ("[The plaintiff must] describe the

subject matter of its alleged trade secrets in sufficient detail to establish each element of a trade

secret.").

Here, Defendant has not produced any evidence of the existence of a trade secret.   In

response to Plaintiffs' interrogatory that asked Defendant to specifically identify the trade

secrets, Defendant offered merely conclusory identification of its alleged trade secrets:

> 1.      All sample requests initiated by ATC sales and marketing efforts;
>
> 2.      All target samples obtained by ATC from its potential customers;
>
> 3.      ATC customer leads, product and customer specifications, customer
>         product specification ("Spec") sheets, point of contact information,

> customer information, ATC pricing to the customers, ATC margins and discount rate from Kancor India; customer purchasing needs, trends and projections.

(Doc. 120). These labels, at most, identify categories of information, not ATC's purported trade secrets.[5] For example, it not clear what Defendant means by "sample request" and "target sample."

Accordingly, Defendant's claim fails because Defendant has failed to identify its trade secrets at all, let alone with particularity. Thus, Plaintiffs' Motion for Summary Judgment is granted and Defendant's Motion for Summary Judgment is denied as to Defendant's claim of trade secret misappropriation (Counterclaim VI).

## 2. Defendant cannot establish that Plaintiffs misappropriated Defendant's alleged trade secrets

The Court finds that Defendant failed to show evidence that Plaintiffs misappropriated Defendant's trade secrets. "Trade secrets and other similar private information constitute assets of the principal." Restatement (Second) of Agency § 396 (1958). A "trade secret" is defined as

> information, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that: derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*MicroStrategy, Inc. v. Bus. Objects, S.A.*, 331 F. Supp. 2d 396, 416 (E.D. Va. 2004) (quoting Va. Code Ann. § 59.1-336).

Defendant alleges that Plaintiffs misappropriated Defendant's trade secrets. Here, Defendant argues that under the VUSTA, just about anything can constitute a trade secret under

---

[5]  Defendant argues that the reason it did not include more specific information was because Plaintiffs did not request Defendant state the *basis* for the claim, but only to identify the relevant information (Doc. 140).

the right set of facts (Doc. 140).   Therefore, Defendant asserts that the list of information provided to Plaintiffs in response to its interrogatory is sufficient to establish Defendant's claim. *Id.*  However, even if Defendant were able to identify its trade secret, it still presents no evidence of Plaintiffs' misappropriation.  In fact, with so little information, a reasonable jury could only conclude that during the course of the parties' business relationship, information was transferred between the parties, a fact that both parties submit.

Accordingly, Defendant's misappropriation of trade secret claim fails because it cannot establish that Plaintiffs misappropriated its alleged trade secrets.  Thus, Plaintiffs' Motion for Summary Judgment is granted and Defendant's Motion for Summary Judgment is denied as to Defendant's claim of trade secret misappropriation (Counterclaim VI).

### 3. Defendant cannot prove any damages arising from the alleged trade secret misappropriation

The Court finds that Defendant cannot prove any damages arising out of its trade secret misappropriation claim.   Like its damages demand for the joint venture claims, Defendant's purported trade secret damages are based only on speculation.   Defendant has not offered any evidence showing that any damages it allegedly suffered were the proximate cause of Plaintiffs' alleged misappropriation, thus requiring the entry of summary judgment on that basis alone.  *Cf. Trident Prods. & Servs., LLC v. Canadian Soiless Wholesale, Ltd.*, 859 F. Supp. 2d, 771, 780 (E.D. Va. 2012) (granting summary judgment where plaintiff lacked "actual objective evidence" that "defendant's breach has resulted in the plaintiff's injury").

Accordingly, the Court grants Plaintiffs' Motion for Summary Judgment and denies Defendant's Motion for Summary Judgment as to Counterclaim VI for three reasons.   First, Defendant cannot establish that it had any trade secrets.   Second, Defendant cannot establish that

34

Plaintiffs misappropriated said trade secrets.  Third, Defendant cannot prove any damages arising from the alleged trade secret misappropriation.

## G.     Plaintiff Kancor India's Alleged Tortious Interference with Defendant's Business Expectancy

The Court grants Plaintiffs' Motion for Summary Judgment and denies Defendant's Motion for Summary Judgment as to Defendant's claim that Plaintiff Kancor India tortiously interfered with Defendant's business expectancy (Counterclaim VII) because Kancor India was a party to the contract and cannot interfere with its own contract.

To make a prima facie case of tortious interference, a party must allege:  "(1) the existence of a valid contractual relationship or business expectancy; (2) the interferor's knowledge of the relationship or expectancy; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted."  *Chaves v. Johnson*, 335 S.E.2d 97, 102 (Va. 1985).

Defendant argues that Plaintiff Kancor India tortiously interfered with Defendant's business expectancy.  Defendant asserts that it had a protected interest in its client contracts and a reasonable expectation of an economic benefit and future work from those clients and from prospective clients (Doc. 19).   Defendant further asserts that Kancor India was aware of Defendant's business expectancy.   *Id.*   Defendant argues that Kancor India conveyed Defendant's business expectation and trade secrets, including client information and commission rate, to its subsidiary Kancor Americas for the purpose of pursuing Defendant's client base.  *Id.* Defendant alleges that through this practice, Plaintiff Kancor India wrongfully and intentionally interfered with Defendant's business expectancy.  *Id.*

However, Defendant cannot establish its claim under the first three elements of the standard articulated in *Chaves* (Doc. 120).  First, Defendant has not identified any contracts between itself and customers or any other evidence of business expectancy outside of its business relationship with Kancor India.  Second, Defendant cannot establish Kancor India's knowledge of said business expectancy.  Third, and importantly, since Defendant was allegedly acting as Plaintiff Kancor India's agent, any contract that Defendant would have entered into would also bind Kancor India, and Kancor India cannot tortiously interfere in its own contracts (Doc. 120).  *See Fox v. Deese*, 362 S.E.2d 699, 708 (Va. 1987) (holding that when a party operates as an agent for another, the party cannot tortuously interfere because "[a] person cannot intentionally interfere with his own contract").  The fourth factor, damages, is also unsupported by any evidence, as Defendant has not provided any evidence of lost revenue.  *Id.*

Accordingly, the Court grants Plaintiffs' Motion for Summary Judgment and denies Defendant's Motion for Summary Judgment as to Defendant's tortious interference claim (Counterclaim VII) because Plaintiff Kancor India was a party to the contract and cannot interfere with its own contract.

**H.     Defendant Presents No Evidence of Plaintiffs' Breach of Contract or Breach of Its Purported Implied Covenant of Good Faith and Fair Dealing**

The Court grants Plaintiffs' Motion for Summary Judgment and denies Defendant's Motion for Summary Judgment as to Defendant's claims that Plaintiffs breached the purported distribution and resale agreements[6] (Counterclaim I) and that Plaintiffs breached the implied covenant of good faith and fair dealing (Counterclaim V) because Defendant presents no evidence of the contract or of Plaintiffs' duty or said breach.

---

[6]     Plaintiffs mistakenly label Counterclaim I as a joint venture claim (Doc. 120); however, this count is limited solely to the purported distribution and resale agreements (Docs. 19, 140).

As stated above, the plaintiff must first establish the existence of a valid contract to establish breach of contract. *Sykes v. Brady-Bushey Ford, Inc.,* 69 Va. Cir. 219, 219 (2005). The essential elements of a valid contract are offer, complete acceptance, and valuable consideration. *Id.* The Supreme Court of Virginia has held that "when parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights." *Ward's Equip. v. New Holland N. Am.*, 493 S.E.2d 516, 520 (Va. 1997). In order for a claim for breach of implied covenant of good faith and fair dealing to be properly pleaded, the plaintiff must not seek redress through an implied covenant claim merely for defendant's unfavorable exercise of its explicit contractual rights. *Id.* A plaintiff must do more than make claims of a defendant's unfavorable exercise of its contractual rights; a plaintiff must allege bad faith and unfair dealing in a contractual relationship. *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 451 (E.D. Va. 2009). While the duty of good faith and fair dealing exists under the Uniform Commercial Code as part of every commercial contract, a party's breach of this implied duty does not amount to an independent tort; it gives rise only to an action for breach of contract. *Charles E. Brauer Co. v. NationsBank of Virginia, N.A.*, 466 S.E.2d 382, 385 (Va. 1996).

Defendant alleges that it entered into "distribution and resale" agreements with Kancor India in 2006 and 2009 (Doc. 19). Defendant argues that Plaintiff breached these agreements when it reduced Defendant's discount, formed a U.S. subsidiary, used this subsidiary as its distributor for certain items, failed to timely ship Defendant's orders, failed to reimburse Defendant for inventory, and directly selling to Defendant's customers without compensating Defendant. *Id.* In addition to its joint venture and trade misappropriation claims, Defendant also claims that Kancor India breached these agreements because Kancor India is liable for inventory that it could not sell and for inventory that was allegedly borrowed from Defendant. *Id.* As

such, Defendant alleges Kancor India breached its duty of good faith and fair dealing by failing

to remit left over inventory to Defendant following the end of their business relationship. *Id.*

In support of these allegations, Defendant presents a cursory review of the spreadsheets

that reveal no reliable evidence (Doc. 120). None of the entries have dates, invoice numbers,

bank wire transfer numbers, or any other information to allow Plaintiffs, and the jury, to examine

Defendant's claim. *Id.* ATC has not pointed to any agreement to show Kancor India is

responsible for Defendant's leftover inventory. *Id.* Additionally, Defendant presents no

precedential or statutory language to guide its analysis. Therefore, there is no admissible

evidence to support Defendant's claim that Kancor India is responsible for any inventory that

ATC has not been able to sell. In addition, a breach of any implied duty would amount only to a

breach of contract claim, and as stated above, Defendant has failed to provide evidence of any

contract regarding the inventory.

Accordingly, the Court grants Plaintiff's Motion for Summary Judgment and denies

Defendant's Motion for Summary Judgment as to Defendant's claims that Plaintiffs breached the

purported distribution and resale agreements (Counterclaim I) and that Plaintiffs breached the

implied covenant of good faith and fair dealing (Counterclaim V) because Defendant presents no

evidence of Kancor India's contract to be liable for ATC's surplus goods.

### VI.   Damages

**A.   Plaintiffs are Not Entitled to Punitive Damages**

The Court grants Defendant's Motion for Summary Judgment as to Plaintiffs' prayer for

punitive damages because Virginia law bars punitive damages for breach of contract claims.

Damages are awarded in tort actions to compensate the plaintiff for all losses suffered

due to the defendant's breach of some duty imposed by law to protect the broad interest of social

policy. *Kamlar Corp. v. Haley*, 299, S.E.2d 514, 517 (Va. 1983). To further protect those interests, the court may award punitive damages to punish the wrongdoer and to deter similar conduct. *Id*. Damages for breach of contract, on the other hand, are subject to the overriding principle of compensation. *Id*. They are limited to those losses, which are reasonably foreseeable when the contract is made. *Id*. The general rule is exemplary or punitive damages are not allowed for breach of contract. *Id*.

Plaintiffs argue that after Defendant persisted in seeking payment of monies owed, Defendants retaliated by filing baseless claims for over $17 million (Doc. 147). However, Plaintiffs' assertions do not amount to an intentional tort, and therefore there can be no recovery of punitive damages for breach of contract. Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Plaintiffs' prayer for punitive damages as it is barred by Virginia Law.

## VIII.   CONCLUSION

The Court **GRANTS in PART** and **DENIES in PART** Plaintiffs' Motion for Summary Judgment and Defendant's Motion for Summary Judgment for numerous reasons. First, the Court **GRANTS** Plaintiffs' motion and **DENIES** Defendant's motion as to Defendant's statute of limitations defense because the Court finds that Plaintiffs' claims for breach of contract, unjust enrichment, and conversion (Counts I, II, and III respectively) are not time-barred. Second, the Court **DENIES** Plaintiffs' and Defendant's motions as to Plaintiffs' claim for breach of contract (Count I) because a genuine issue of material fact exists with respect to whether a valid contract existed concerning Defendant's alleged obligation to surrender the margins to Plaintiff Kancor Ingredients, Ltd. Third, the Court **DENIES** Plaintiffs' and Defendant's motions as to Plaintiffs' claim for unjust enrichment (Count II) because a genuine issue of material fact

exists with respect to whether an express agreement existed for Defendant to remit the margins to Plaintiff Kancor Ingredients, Ltd. that would result in Defendant withholding more than the negotiated amount.   Fourth, the Court **DENIES** Plaintiffs' and Defendant's motions as to Plaintiffs' claim for conversion (Count III) because a genuine issue of material fact exists as to whether the margins were part of a segregated or identifiable fund to which Plaintiff was entitled. Fifth, the Court **GRANTS** Plaintiffs' motion and **DENIES** Defendant's motion as to Defendant's claims of specific performance (Counterclaim II), breach of contract (Counterclaim III), and unjust enrichment (Counterclaim IV) relating to an alleged joint venture because (1) no meeting of the minds occurred regarding the formation of a joint venture, (2) the Virginia Statute of Frauds bars Defendant's joint venture claims, and (3) Defendant's joint venture claims are time-barred.   Sixth, the Court **GRANTS** Plaintiffs' motion and **DENIES** Defendant's motion as to Defendant's trade secret claim (Counterclaim VI) because Defendant has not provided any evidence of its trade secrets, evidence of Plaintiffs' misappropriation of said trade secrets, or evidence of any resultant damages.   Seventh, the Court **GRANTS** Plaintiffs' motion and **DENIES** Defendant's motion as to Defendant's claim of tortious interference with its business expectancy (Counterclaim VII) because Plaintiff Kancor Ingredients, Ltd. is a party to the contract and cannot interfere with its own contract.   Eighth, Court **GRANTS** Plaintiffs' motion and **DENIES** Defendant's motion as to Defendant's claim that Plaintiffs breached the purported distribution and resale agreements (Counterclaim I) and Plaintiffs' implied duty of good faith and fair dealing (Counterclaim V) because Defendant presents no evidence of Plaintiffs' duty or breach.   Finally, the Court **GRANTS** Defendant's motion as to Plaintiffs' prayer for punitive as punitive damages are not available for breach of contract claims.

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 111) and Plaintiffs' Motion for Summary Judgment (Doc. 119) are **GRANTED in PART** and **DENIED in PART**; and

**IT IS FURTHER ORDERED** that the following claims shall proceed to trial on March 7, 2016:  Plaintiff's claims for breach of contract (Count 1); unjust enrichment (Count 2); and conversion (Count 3).

**IT IS SO ORDERED**.

ENTERED this 25th day of February, 2016.

Alexandria, Virginia
2/  25  / 2016

                                         /s/ Gerald Bruce Lee
                                         United States District Judge